**WO**

NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-09-1145-PHX-GMS |
| Plaintiff, | **ORDER** |
| vs. | |
| Jesus Velasquez-Lopez -2,<br>Jorge Daniel Lopez-Mejia -3,<br>Eduardo Menchaca-Quijada -6,<br>Juan Jose Velasquez-Lopez -8, | |
| Defendants. | |

Pending before the Court are two motions, the Motion to Dismiss for Outrageous Government Conduct (Dkt. # 112), and Motion to Produce Grand Jury Transcripts (Dkt. # 114). The Motion to Dismiss (Dkt. # 112) was originally filed by Defendant Jesus Rogelio Sanchez-Neiblas. Sanchez-Neiblas has since withdrawn from this Motion. Prior to his withdrawal, however, Defendants Juan Jose Velasquez-Lopez, Jesus Velasquez-Lopez, and Jorge D. Lopez-Mejia joined the motion. (Dkt. ## 125, 145, 229). These two motions, thus remain pending.[1]

In addition, Defendant Jesus Velasquez-Lopez filed a Motion for the Production of Grand Jury Transcripts (Dkt. # 114), which Juan Jose Velasquez-Lopez joined (Dkt. # 140).

---

[1] Two other motions were pending (Dkt. ## 120, 131). These motions, however, have since been denied as moot.

Oral argument was held on these two remaining motions on Wednesday, May 12. The parties argued the Motion to Dismiss for Outrageous Government Conduct and agreed to submit the Motion for the Production of Grand Jury Transcripts on the papers.

**DISCUSSION**

**I.     Motion for the Production of Grand Jury Transcripts**

The Motion for the Production of Grand Jury Transcripts is denied. "A challenge to the reliability or competence of the evidence presented to the grand jury will not be heard." *United States v. Williams,* 504 U.S. 36, 54 (1992) (internal quotations omitted). Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) authorizes the limited release of such transcripts "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." In his motion, the Defendant essentially argues that he was merely present at the wrong time and place in a reverse-sting operation conducted by the government and that his proximity to others that may have been involved in the conspiracy is an insufficient basis on which to bring charges against him. The court construes this as a challenge to the sufficiency of the evidence on which the grand jury found probable cause. Nevertheless, once an indictment issues it is presumed to be valid if it appears valid on its face. *United States v. Hickey*, 367 F.3d 888, 894 (9th Cir. 2004). "[A court does] not dismiss an indictment valid on its face absent a showing that the government flagrantly manipulated, overreached or deceived the jury, . . . '[n]or does incomplete evidence before the grand jury detract from the resulting indictment.'" *Id.* (quoting *United States v. DeLuca,* 692 F.2d 1277, 1280 (9th Cir. 1982)). Furthermore, challenging the sufficiency of the evidence on which an indictment is based does not constitute "a matter that occurred before the grand jury" that shows that a "ground may exist to dismiss the indictment." *See* Fed. R. Crim. P. 6(e)(3)(E)(ii). The motion is, therefore, denied.

**II.    Motion to Dismiss for Outrageous Government Conduct**

The Defendants also move to dismiss the charges based on outrageous government conduct because the charges in the indictment arise out of a reverse-sting operation conducted by the government. In the reverse sting operation at issue here, a government

agent posed as a frustrated low-level seller of cocaine, who wished to commission a home invasion on his supplying stash house to steal between 39 and 42 kilograms of cocaine. The government agent and a confidential informant solicited for invasion crews, who were willing to conduct an armed assault on the stash house and then divide the cocaine proceeds among themselves. Because the agent represented that the stash house would be protected by armed guards, those willing to conduct the invasion of the stash house were induced to arm themselves for the operation. The government contends, and the Defendants do not contest, that they originally targeted Co-defendants, Benjamin Melendez-Lopez and Jesus Rojilio Sanchez-Nieblas who, in conversations with a confidential informant and or the government agent, acknowledged that they had connections with a robbery crew that had done this type of conduct before.

For an indictment to be dismissed due to "outrageous conduct," the alleged criminal conduct must have been induced as a result of "brutal" conduct on the part of government agents, in which they employ "physical or psychological coercion against the defendant"or in which the government "engineer[s] and direct[s] the criminal enterprise from start to finish." *United States v. Fernandez*, 852 F.3d 1199, 1238 (9th Cir. 2004). The governmental conduct challenged must be "so grossly shocking as to violate the universal sense of justice." *United States v. Bonanno*, 852 F.2d 434, 437 (9th Cir. 1988).

The *Bonanno* court lists five examples of situations in which the "government's conduct is permissible."[2] *Id.* The Defendants seek to argue the reverse of these examples, contending that, if none of these five situations occurred, then, as a matter of law, the government conduct has been outrageous. This Court does not so read *Bonanno* as such a

---

[2] The five situations include the following: "(1) the defendant was already involved in a continuing series of similar crimes, or the charged criminal enterprise was already in progress at the time the government agent became involved; (2) the agent's participation was not necessary to enable the defendants to continue the criminal activity; (3) the agent used artifice and stratagem to ferret out criminal activity; (4) the agent infiltrated a criminal organization; and (5) the agent approached persons already contemplating or engaged in criminal activity." *Bonanno*, 852 F.2d at 437.

"reverse-checklist." Even if it did, it finds that at least some, if not all, of the permissibility factors set out in *Bonanno* have been met. The Court further agrees with the previous analysis undertaken by this another division of this Court, which addressed a companion sting operation. *United States v. Simpson*, 2010 WL 1611483 (D. Ariz. Apr. 20, 2010).

Defendants argue that the government's conduct here is outrageous because no stash house ever existed, the quantity of supposed cocaine to be seized was the product of the government's imagination, as was the presence of armed guards at the imaginary stash house designed to induce the Defendants to bring weapons. Defendants thus assert that the whole of the criminal operation was outrageous because it was the product of government invention or coercion from start to finish.

The Ninth Circuit has consistently held, however, that sting operations, in which the government is the instigator of criminal conduct, are, without more, insufficient to constitute "outrageous government conduct." *See Simpson*, at 6-7 (collecting cases); *see also, e.g.*, *United States v. Luttrell*, 889 F.2d 806, 811–14 (9th Cir. 1989) (holding that counterfeit credit card sting operation not outrageous government conduct); *United States v. Slaughter*, 891 F.2d 691, 695–96 (9th Cir. 1989) (finding that the government's use of informant to strike up personal relationship with defendant and to persuade him to sell cocaine was not outrageous conduct); *Bonnano*, 852 F.2d 434, 437–38 (9th Cir. 1988) (FBI informant posing as potential investor in fraudulent scheme did not constitute outrageous government conduct); *United States v. Citro*, 842 F.2d 1149, 1152–53 (9th Cir. 1988) (counterfeit credit card sting operation not outrageous government conduct); *United States v. Simpson*, 813 F.2d 1462, 1464–71 (9th Cir. 1987) (FBI manipulating woman into providing sexual favors to lure target into selling heroin not outrageous conduct); *Shaw v. Winters*, 796 F.2d 1124, 1125–26 (9th Cir. 1986) (food stamp sting operation not outrageous government conduct); *United States v. Wiley*, 794 F.2d 514, 515–16 (9th Cir. 1986) (government activation of scheme to smuggle drugs into prison not outrageous conduct); *United States v. Williams*, 791 F.2d 1383, 1386–87 (9th Cir.1986) (prison authorities prior knowledge of escape plans not outrageous conduct).

Here, Defendants offer no argument explaining how this case involves anything more than an ordinary sting operation in order to constitute outrageous conduct. While it is true that the stash house was not real, the government did not recruit the Defendants to join the robbery team to invade the stash house. The government did not know their identities to solicit them. Rather, the Co-Defendants did the recruiting. Although the government may have provided the motivation for such solicitation, they did not conduct or direct the solicitation. Further, the government did not arbitrarily pursue the reverse-sting operations with the co-defendants. The government had reason to believe that the Co-Defendants, who recruited the moving Defendants, had conducted similar operations. Further, as this Court explained in a very similar fact situation in *Simpson,* the five factors mentioned in *Bonanno* have been sufficiently satisfied here. As in *Simpson*, the government could not have known beforehand of all of the identities of persons willing to conspire to conduct a home invasion. Further, the Defendants are charged with conspiring to conduct a home invasion, not the actual conduct of it. And, finally, the Defendants here were recruited not by the government, but rather by Co-Defendants, who claimed to associate with others who were experienced in conducting similar operations.

For the above reasons, the Court finds that the government's conduct was not outrageous. It therefore denies the Defendant's Motion to Dismiss on that basis.

**IT IS HEREBY ORDERED** that the Motion to Dismiss for Outrageous Government Conduct (Dkt. # 112) is **DENIED**.

**IT IS FURTHER ORDERED** that the Motion for the Production of Grand Jury Transcripts (Dkt. # 114) is **DENIED**.

DATED this 18th day of May, 2010.

G. Murray Snow
United States District Judge